[Cite as *State v. Maynard*, 2026-Ohio-2558.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HENRY COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

v.

ROBBY W. MAYNARD,

    DEFENDANT-APPELLANT.

CASE NO. 7-25-10

OPINION AND
JUDGMENT ENTRY

Appeal from Henry County Common Pleas Court
Trial Court No. 24 CR 0012

Judgment Reversed and Cause Remanded

Date of Decision:  July 6, 2026

APPEARANCES:

    *Joseph C. Patituce* for Appellant

    *Gwen Howe-Gebers* for Appellee

**ZIMMERMAN, P.J.**

{¶1} Defendant-appellant, Robby W. Maynard ("Maynard"), appeals the October 28, 2025 judgment entry of sentence of the Henry County Court of Common Pleas. For the reasons that follow, we reverse.

{¶2} On December 15, 2023, a fatal two-vehicle crash occurred at the intersection of Township Road E and County Road 10A in Marion Township, Henry County, Ohio, in which a vehicle owned by Maynard struck another vehicle, resulting in the death of its driver. While both Maynard and his passenger sustained serious injuries and had to be extricated from the vehicle, investigators ultimately determined that Maynard was driving at the time of the collision. Subsequent testing revealed that Maynard had a blood alcohol concentration of 0.228 grams per 100 milliliters of whole blood.

{¶3} On January 31, 2024, Maynard was indicted by the Henry County Grand Jury on Count One of aggravated vehicular homicide in violation of R.C. 2903.06(A)(1), (B)(2)(a), a second-degree felony; Count Two of aggravated vehicular homicide in violation of R.C. 2903.06(A)(2)(a), (B)(3), a third-degree felony; Count Three of aggravated vehicular assault in violation of R.C. 2903.08(A)(1)(a), (B)(1), a third-degree felony; Count Four of vehicular assault in violation of R.C. 2903.08(A)(2)(b), (C)(2), a fourth-degree felony; Counts Five and Six of operating a motor vehicle while under the influence of alcohol or drugs of abuse ("OVI") in violation of R.C. 4511.19(A)(1)(a) and (f), respectively, and

(G)(1)(a), first-degree misdemeanors. Maynard appeared for arraignment on February 21, 2024 and pleaded not guilty to the indictment.

{¶4} On May 30, 2025, Maynard withdrew his not guilty pleas and entered guilty pleas, under a negotiated plea agreement, to Counts One, Two, Three, and Four of the indictment. In exchange for his change of pleas, the State agreed to dismiss Counts Five and Six and to a joint sentencing recommendation. The trial court accepted Maynard's guilty pleas, found him guilty of Counts One, Two, Three, and Four, and ordered a presentence investigation.[1]

{¶5} On June 30, 2025, through his newly retained counsel, Maynard filed a presentence motion to withdraw his guilty pleas. In the motion, Maynard asserted a claim of actual innocence and argued that a seizure suffered just prior to the change of plea hearing rendered his pleas less than knowing, intelligent, and voluntary, and that his trial counsel was ineffective for allowing the change of plea hearing to proceed. The State filed a memorandum in opposition to Maynard's presentence motion to withdraw his guilty pleas on July 21, 2025. After a hearing on July 29, 2025, the trial court denied Maynard's presentence motion to withdraw his guilty pleas on August 28, 2025.

{¶6} On October 27, 2025, the trial court sentenced Maynard (based on the joint recommendation of the parties) to a mandatory minimum term of 8 years in

---

[1] At sentencing, the trial court dismissed Counts Five and Six of the indictment.

prison to a maximum term of 12 years in prison as to Count One and to 3 years in prison as to Count Three.[2] The trial court ordered Maynard to serve the prison sentences concurrently for an aggregate sentence of a mandatory minimum term of 8 years in prison to a maximum term of 12 years in prison. Further, the trial court merged Counts One and Two and Counts Three and Four for purposes of sentencing, respectively. Additionally, the trial court suspended Maynard's driver's license for his lifetime.

{¶7} On October 28, 2025, Maynard filed his notice of appeal. He raises three assignments of error for our review. In his three assignments of error, Maynard raises intertwined arguments challenging the validity of his guilty pleas. Because these arguments stem from the identical factual predicate—the medical emergency that Maynard suffered immediately prior to his plea colloquy—we will address them together. In particular, while Maynard's first assignment of error challenging the trial court's denial of his presentence motion to withdraw his guilty pleas is dispositive, we will address his second and third assignments of error within that framework.

## First Assignment of Error

**The trial court erred in denying Appellant's pre-sentence Motion To Withdraw his plea when right before the plea hearing Appellant suffered an extreme medical emergency witnessed by all parties and Appellant's timely filed Motion demonstrated a**

---

[2] The trial court filed its judgment entry of sentence on October 28, 2025.

**plausible defense to the crimes for which he was convicted and he consistently maintained his actual innocence.**

**Second Assignment of Error**

**Appellant was deprived of the effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution when trial counsel permitted a plea bargain and plea hearing to occur after Appellant suffered a major neurological event in the courtroom.**

**Third Assignment of Error**

**Appellant did not enter a knowing, voluntary, and intelligent plea of guilty when suffering from a major neurological event and the trial court failed to strictly inform Appellant of all of his constitutional rights during the Crim. R. 11 plea colloquy.**

{¶8} In his first assignment of error, Maynard argues that the trial court abused its discretion by denying the presentence motion to withdraw his guilty pleas despite his consistent claim of actual innocence and a medical emergency which he suffered immediately before the change of plea hearing. Specifically, Maynard contends that the trial court failed to freely and liberally grant his request since his timely motion demonstrated a plausible defense to the charges and established that the medical emergency compromised his ability to knowingly, intelligently, and voluntarily enter his guilty pleas.

{¶9} Likewise, in his second and third assignments of error, Maynard contends that his original trial counsel rendered ineffective assistance by permitting

the change of plea hearing to proceed, and that his guilty pleas were not knowing, intelligent, or voluntary, respectively.

*Standard of Review*

**{¶10}** "Appellate review of the trial court's denial of a motion to withdraw a guilty plea is limited to whether the trial court abused its discretion." *State v. Streeter*, 2009-Ohio-189, ¶ 12 (3d Dist.). An abuse of discretion suggests the trial court's decision is unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157-158 (1980).

*Analysis*

**{¶11}** Criminal Rule 32.1 provides that a defendant is permitted to file a presentence motion to withdraw a guilty plea. *State v. Driscol*, 2022-Ohio-1810, ¶ 15 (3d Dist.). As a general rule, "a presentence motion to withdraw a guilty plea should be freely and liberally granted." *State v. Xie*, 62 Ohio St.3d 521, 527 (1992). "However, 'a defendant does not have an absolute right to withdraw a plea prior to sentencing.'" *Driscol* at ¶ 15, quoting *Xie* at paragraph one of the syllabus. "As a result, a 'trial court must conduct a hearing to determine whether there is a reasonable and legitimate basis for withdrawal of the plea.'" *Id.*, quoting *Xie* at paragraph one of the syllabus.

**{¶12}** When reviewing a trial court's denial of a presentence motion to withdraw a guilty plea, this court balances nine non-exhaustive factors: (1) whether the withdrawal will prejudice the prosecution; (2) the quality of defense counsel's

representation; (3) the adequacy of the Crim.R. 11 hearing; (4) the scope of the hearing on the motion to withdraw; (5) whether the trial court afforded the motion full and fair consideration; (6) the reasonableness of the motion's timing; (7) the reasons asserted for the withdrawal; (8) the defendant's understanding of the charges and potential penalties; and (9) whether the defendant maintains a claim of innocence or a complete defense. *Id*. at ¶ 16. *See State v. Edwards*, 2023-Ohio-3213, ¶ 8-9 (3d Dist.) (clarifying that the nine-factor analysis remains the applicable standard of review for presentence motions to withdraw a plea unless the defendant alleges that he or she became aware of new evidence that would have affected their decision to enter the plea). "None of the factors is determinate on its own and there may be numerous additional aspects weighed in each case." *Driscol* at ¶ 16

{¶13} In this case, the trial court denied Maynard's presentence motion to withdraw his guilty pleas after applying the reasonable-and-legitimate-basis factors and determining that the factors weighed in favor of the State. In particular, the trial court emphasized that withdrawing the guilty pleas would prejudice the State because the accident occurred in December 2023, and the passage of time—along with seven prior defense-requested continuances—made prosecution more difficult. Moreover, as to Maynard's claim of actual innocence, the trial court determined that there was no reason to believe that the evidence supporting his defense was unknown to him at the time of the change of plea, specifically noting that his trial counsel had fully explored the claims and hired a medical doctor and crash

reconstructionist to support them. Furthermore, the trial court determined that Maynard's pre-hearing medical episode did not render his guilty pleas involuntary. Rather, the trial court highlighted that EMS personnel evaluated him and found him alert and responsive, that he declined hospital transport, and that he confirmed during the plea colloquy that he felt well enough to proceed to change his pleas. Ultimately, the trial court concluded that Maynard was represented by competent counsel, fully understood the consequences of his pleas, and that his motion was merely a change of heart triggered by the trial court revoking his bond pending sentencing.

{¶14} In addressing the factors to be considered when evaluating a presentence motion to withdraw a plea, Maynard contends that factors one, two, three, six, seven, eight, and nine weigh in favor of withdrawal. Specifically, Maynard argues that the trial court erroneously found that the State would be prejudiced by further delay (factor one), asserting that the evidence in the case— such as body camera footage, recorded interviews, and medical records—would remain static and unaffected by the passage of time. He further contends that his medical emergency compromised the representation afforded to him by his trial counsel (factor two), the validity and extent of the Crim.R. 11 colloquy (factor three), and his ability to genuinely understand the nature of the proceedings and the sentence to which he was agreeing (factor eight). Finally, he asserts that his timely motion (factor six) stated specific, legitimate reasons for withdrawal, which were

-8-

rooted in a plausible claim of actual innocence and a complete defense that he was not the driver of the vehicle (factors seven and nine).

{¶15} Based on our review of the record, we conclude that the trial court abused its discretion by denying Maynard's presentence motion to withdraw his guilty pleas. While presentence motions are not granted as a matter of absolute right, the unique facts of this case—namely, a consistently maintained claim of innocence, a courtroom medical emergency, and a fundamental breakdown in the constitutional guarantee of effective representation—demand the liberal consideration envisioned by the Supreme Court of Ohio. Examining these specific circumstances, the trial court's decision was unreasonable, arbitrary, or unconscionable, and failed to comport with the established principle that such motions should be freely granted in the interests of fairness and justice.

*First Factor*

{¶16} As to the first factor, the State contends that it would be prejudiced because the passage of time since the December 2023 crash makes prosecuting the case more difficult due to the fading memories and potential unavailability of its lay and expert witnesses. This type of generalized claim of prejudice has been determined to be unavailing. *See State v. Zimmerman*, 2010-Ohio-4087, ¶ 22-25 (10th Dist.).

{¶17} Indeed, while the State points to the overall age of the case, our precedent dictates a much narrower review. Although prejudice to the State "'is

often classified as the most important factor in the balancing test,'" it is not presumed. *State v. Martre*, 2019-Ohio-2072, ¶ 14 (3d Dist.), quoting *State v. Cuthbertson*, 139 Ohio App.3d 895, 899 (7th Dist. 2000). Rather, the requisite prejudice must relate solely to the defendant's decision to enter the plea agreement. *Zimmerman* at ¶ 23. Thus, the inquiry is narrowly focused on whether the State's case was materially impaired during the specific window between the entry of the plea and the motion to withdraw it. *See id.* (explaining that "the prejudice must relate 'solely' to the entering of the plea bargain"), quoting *Cuthbertson* at 900 ("Absent any showing of some other real prejudice to the state which occurred solely as a result of entering into a plea bargain, as here, the potential harm to the state in vacating the plea is slight, whereas the potential harm to the defendant in refusing to vacate the plea is great.").

{¶18} Here, we perceive the State's arguments as relating primarily to the routine inconvenience of having to prosecute its case, rather than to actual, articulated prejudice. *Accord id.* at ¶ 24 (rejecting similar arguments regarding fading memories and concluding they related "only to the inconvenience of having to prosecute its case, rather than relating to actual, articulated prejudice"). Importantly, the State failed to provide any indication that any of its witnesses became unavailable during the narrow, thirty-day window between Maynard entering his pleas on May 30, 2025, and filing his motion to withdraw it on June 30, 2025. *Accord id.*, citing *State v. Boyd*, 1998 Ohio App. LEXIS 4914, *15 (10th

Dist. Oct. 22, 1998) (asserting that, "[g]enerally, [prejudice] involves one or more witnesses becoming unavailable due to the delay in the trial resulting from the plea withdrawal"). Consequently, we decline to presume that the State's evidence degraded, its witnesses became unavailable, or their memories faded where such prejudice has not been demonstrated on the record. *Accord id.* ("We will not presume that the two victims have become unavailable where it has not been demonstrated" when "mere days passed between the plea and the filing of the motion to withdraw it.").

{¶19} Moreover, the trial court's reliance on the age of the case and the history of pretrial continuances was misplaced. Critically, delays and continuances granted prior to Maynard's May 30, 2025 change of pleas—for reasons unrelated to Maynard's pleas—have *no* bearing on the prejudice caused by the withdrawal of those pleas. *Accord id.* at ¶ 25. Therefore, since the State failed to demonstrate actual, articulated prejudice resulting solely from the withdrawal of the pleas, the trial court erred by weighing this factor against Maynard. *See id.*

*Second Factor*

{¶20} The second factor in our analysis requires us to consider whether Maynard was represented by effective counsel. Correspondingly, Maynard challenges the effectiveness of his original trial counsel in his second assignment of error. *See State v. Tingler*, 2022-Ohio-3792, ¶ 11 (4th Dist.) (noting that, "[g]enerally, a guilty plea waives all appealable errors, including claims of

-11-

ineffective assistance of counsel, except to the extent that the alleged errors precluded appellant from knowingly, intelligently and voluntarily entering his guilty plea"). Because this constitutional claim goes to the very heart of the second withdrawal factor, we will address them together.

{¶21} A defendant asserting a claim of ineffective assistance of counsel must establish: (1) the counsel's performance was deficient or unreasonable under the circumstances; and (2) the deficient performance prejudiced the defendant. *State v. Kole*, 92 Ohio St.3d 303, 306 (2001), citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In order to show counsel's conduct was deficient or unreasonable, the defendant must overcome the presumption that counsel provided competent representation and must show that counsel's actions were not trial strategies prompted by reasonable professional judgment. *Strickland* at 687. Counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie*, 81 Ohio St.3d 673, 675 (1998). Tactical or strategic trial decisions, even if unsuccessful, do not generally constitute ineffective assistance. *State v. Carter*, 72 Ohio St.3d 545, 558 (1995). Rather, the errors complained of must amount to a substantial violation of counsel's essential duties to his client. *See State v. Bradley*, 42 Ohio St.3d 136, 141-142 (1989), quoting *State v. Lytle*, 48 Ohio St.2d 391, 396 (1976), *vacated in part on other grounds*, 438 U.S. 910 (1978).

**{¶22}** "Prejudice results when 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *State v. Liles*, 2014-Ohio-259, ¶ 48 (3d Dist.), quoting *Bradley* at 142, citing *Strickland* at 691. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.*, quoting *Bradley* at 142 and citing *Strickland* at 694.

**{¶23}** "Ineffective assistance of counsel can affect the voluntariness of a guilty or no-contest plea when 'a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel.'" *State v. Drain*, 2022-Ohio-3697, ¶ 37, quoting *Hill v. Lockhart*, 474 U.S. 52, 56 (1985). "In that situation, 'the voluntariness of the plea depends on whether counsel's advice "was within the range of competence demanded of attorneys in criminal cases."'" *Id.*, quoting *Hill* at 56, quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970).

**{¶24}** We agree with Maynard's contention that his original trial counsel's performance fell below an objective standard of reasonable representation. Indeed, it is undisputed that just prior to executing his plea agreement, Maynard suffered a significant medical emergency—described as a seizure—inside the courthouse. Relevantly, the record reflects that Maynard had a documented history of seizures requiring medical care—a condition that was actively incorporated into his defense strategy. Nevertheless, despite the acute medical event in the courthouse, Maynard's original trial counsel permitted the change of plea hearing to proceed.

Corroborating Maynard's claim, his original trial counsel provided an affidavit in support of Maynard's presentence motion to withdraw his guilty pleas, explicitly *admitting* that his failure to request a continuance or object to the proceedings thereafter constituted deficient performance.

{¶25} While an attorney's own post-hoc admission of deficiency is not strictly dispositive, the nature of the admissions in the affidavit dictate how they are weighed. The Supreme Court of Ohio has held that a "broad, open-ended assertion of ineffective counsel" in an affidavit is merely a "conclusion of law" that, without a showing of actual prejudicial factors, does not meet the burden of proof. *State v. Jackson*, 64 Ohio St.2d 107, 112 (1980). Similarly, an affidavit that lacks operative facts and instead serves merely as "notarized legal argument" is insufficient to establish deficient representation. *State v. Agee*, 2017-Ohio-7750, ¶ 11 (7th Dist.). However, an attorney's affidavit serves as competent evidence of an inexcusable omission when it details specific, factual instances demonstrating that counsel fell below the objective standard of reasonable representation. *See State v. Pheils*, 2014-Ohio-1454, ¶ 21 (6th Dist.)

{¶26} Here, rather than presenting a mere conclusion of law, Maynard's original trial counsel's affidavit details specific, operative facts regarding an inexcusable omission: failing to act in the face of a client's acute medical emergency. *See id.* at ¶ 19. Critically, Maynard's original trial counsel averred that Maynard "maintained his innocence" throughout the representation and "wanted to

proceed to trial" right up until the pleas were entered. (Doc. No. 106). Detailing Maynard's compromised condition, his original trial counsel attested that, following the seizure, Maynard "appeared to be sluggish, slow, and not thinking clearly," "did not appear to be his normal self," and was not in a mental state to proceed. (*Id.*). Finally, acknowledging his own deficient performance, Maynard's original trial counsel conceded that he "should have objected to moving forward" and asked to reset the matter, expressing his belief that Maynard would not have entered the guilty pleas but for the seizure and its effect on his mental state. (*Id.*).

{¶27} Crucially, these admissions do not stand alone. Maynard's original trial counsel's affidavit is independently corroborated by the objective record, evidencing that his original trial counsel did not merely invent a post-hoc justification for his ineffectiveness. Rather, Maynard's original trial counsel's admission of Maynard's cognitive state is tied to the documented two-hour emergency medical services ("EMS") delay and a plea agreement that appeared to offer little in the way of an actual bargain. *Compare State v. Waters*, 2023-Ohio-721, ¶ 17 (10th Dist.) (rejecting an unsupported post-hoc claim of ineffectiveness where the totality of the circumstances, including a highly beneficial plea deal, contradicted the defendant's argument).

{¶28} Moreover, beyond the admissions in the affidavit, the record reveals no tactical justification for forging ahead. In particular, the objective circumstances of the record in this case demonstrate that Maynard's original trial counsel provided

ineffective assistance by failing to request a continuance. Generally, an attorney's decision whether to request a continuance is considered a matter of trial strategy and does not constitute ineffective assistance of counsel. *State v. Hooper*, 2022-Ohio-2990, ¶ 54 (3d Dist.). However, the failure to request a continuance rises to the level of constitutionally deficient performance when there is no strategic advantage to proceeding and the failure severely prejudices the defendant. *See United States v. Abney*, 812 F.3d 1079, 1092 (D.C.Cir. 2016) (concluding that trial counsel's failure to request a continuance was unjustifiable where there was no strategic reason not to act, noting that "it cost the defense nothing and the possible benefit . . . was undoubtedly significant"); *Green v. Stephens*, 2017 U.S. Dist. LEXIS 71132, *24 (S.D.Tex. May 10, 2017) (determining that trial counsel's performance was deficient where "there is simply no strategic reason for not [requesting a continuance], as the only negative outcome could have been a denial of said request").

{¶29} Applying these principles, there was no valid tactical justification for Maynard's original trial counsel's failure to intervene. In other words, by failing to request a continuance to ensure that his client had regained the requisite cognitive clarity to proceed following a sudden neurological event, Maynard's original trial counsel permitted him to waive fundamental constitutional rights while in a compromised state. Importantly, the haste in executing this waiver is underscored by the limited practical value of the plea agreement itself. Indeed, Ohio courts

recognize that an attorney may fail in their duty of competent representation by advising a client to enter a guilty plea that offers no actual benefit. *State v. Brown*, 2017-Ohio-184, ¶ 13 (8th Dist.). To determine whether a defendant received a genuine benefit, reviewing courts must examine the totality of the circumstances surrounding the plea. *Id.*

{¶30} Examining those circumstances here, Maynard's plea agreement resulted in concessions of potentially limited benefit. Critically, while the State agreed to dismiss the two misdemeanor OVI charges (Counts 5 and 6), the trial court explicitly noted on the record that these counts would merge with the felony convictions at sentencing anyway; thus, their dismissal offered no actual reduction in Maynard's overall sentencing exposure. Furthermore, while the plea agreement included a joint sentencing recommendation for concurrent sentences, this recommendation was not binding. Rather, by accepting the plea agreement and pleading guilty in this case, Maynard agreed to the maximum statutory sentences of eight years on Count 1 (including a lifetime driver's license suspension) and 36 months on Count 3, while still facing the very real possibility that the trial court could run those terms consecutively. Thus, in light of the concessions offered, a brief continuance to ensure Maynard's cognitive clarity would have been a reasonable safeguard. *See State v. Yarber*, 102 Ohio App.3d 185, 190 (12th Dist. 1995) ("Trial counsel's 'strategy' was so far out of the realm of legitimate trial strategy, ordinary trial counsel would 'scoff' at the hearing of it.").

-17-

{¶31} Furthermore, the record includes affidavits from Maynard and his wife, which provided the trial court with additional context to weigh when evaluating the validity of Maynard's pleas. These affidavits outline their assertions regarding communications with Maynard's original trial counsel, with Maynard alleging that he was urged to plead guilty despite maintaining his innocence. (Doc. No. 104, Ex. E). His wife's affidavit similarly raised concerns regarding Maynard's original trial counsel's trial preparation. (Doc. No. 104, Ex. D). This information was part of the broader record available to the trial court to assess credibility and determine whether the decision to proceed with the plea was the result of a reasoned strategy or other underlying factors.

{¶32} Having concluded that his original counsel's omissions fell below an objective standard of reasonable representation, we must now determine whether this deficient performance prejudiced Maynard. "'[W]hen a defendant claims that his counsel's deficient performance deprived him of a trial by causing him to accept a plea, the defendant can show prejudice by demonstrating a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."'" *Drain*, 2022-Ohio-3697, at ¶ 38, quoting *Lee v. United States*, 582 U.S. 357, 363 (2017), quoting *Hill*, 474 U.S. at 59. When evaluating the prejudice prong of an ineffective assistance of counsel claim following a guilty plea, a court must examine the "totality of circumstances" to determine whether it would have been rational for the defendant to reject the plea and proceed to trial. *State v.*

*Romero*, 2019-Ohio-1839, ¶ 29. In assessing this rationality, the court's evaluation can include, but is not limited to, considering (1) the consequences of going to trial; (2) the defendant's priorities; (3) the defendant's personal ties and circumstances; (4) judicial advisements. *See id.* at ¶ 29-34. "From these and other factors present in a given case, [a] court will determine whether the totality of circumstances supports a finding that counsel's performance was deficient and, if so, whether the deficient performance was prejudicial to the defendant." *Id.* at ¶ 34.

{¶33} In the context of a plea withdrawal, the prejudice inquiry does not require a defendant to prove that he would have fared better at trial. *Id.* at ¶ 30. "While a defendant without any viable defense 'will rarely be able to show prejudice' from accepting a plea agreement, the United States Supreme Court declined to adopt a 'per se rule' that a defendant with no viable defense at trial cannot show prejudice." *Id.*, quoting *Lee* at 367. Instead, the "reasonableness inquiry focuses on the defendant's perspective" at the time of the plea. *Id.*

{¶34} Under the totality of the circumstances here, Maynard can demonstrate the requisite prejudice. *Compare Lee* at 369. As we previously addressed, the plea agreement offered limited benefits regarding Maynard's overall sentencing exposure. *Accord State v. Khoshknabi*, 2018-Ohio-1752, ¶ 43 (8th Dist.) (determining "that the consequences of taking a chance at trial were not markedly harsher than pleading guilty"). Indeed, because the potential consequences of the pleas were comparable in severity to those of a conviction at trial, "even the smallest

chance of success at trial" would have made his decision to reject the plea agreement entirely rational. *Lee* at 367. Given that the plea agreement provided little tangible mitigation of his potential sentence, a trial, however daunting, represented a reasonable alternative for seeking a more favorable outcome.

{¶35} In addition to the limited sentencing concessions, the record contains contemporaneous evidence of Maynard's priorities at the time of the pleas. *See Romero* at ¶ 30; *Lee* at 369. Importantly, the record reflects that Maynard consistently maintained his innocence throughout the proceedings, insisting that his passenger was the driver at the time of the fatal crash. In other words, this was not a post hoc rationalization. Indeed, Maynard had already retained a medical doctor and a traffic crash reconstructionist to prepare this exact theory for trial. These actions objectively demonstrate that Maynard's priority was to contest the charges. *See Romero* at ¶ 31. Moreover, Maynard's prompt retention of new counsel and the filing of a motion to withdraw his pleas shortly after recovering from the medical incident strongly corroborate his assertion that the pleas were the result of his compromised state rather than a genuine desire to admit guilt. Consequently, there is a reasonable probability that, had trial counsel intervened and requested a continuance to allow Maynard to fully recover from the neurological event, Maynard would have continued to assert his innocence and would have insisted on going to trial. *Compare Lee* at 369 ("In the unusual circumstances of this case, we conclude that Lee has adequately demonstrated a reasonable probability that he

would have rejected the plea had he known that it would lead to mandatory deportation.").

**{¶36}** Therefore, given the unique medical event that preceded the plea hearing, uncertainties remain regarding whether Maynard received competent representation when his original trial counsel permitted the change of plea to proceed. In evaluating a presentence motion to withdraw, we look to the totality of the circumstances to determine if there is a reasonable and legitimate basis for withdrawal, which includes assessing whether the accused was represented by "highly competent counsel." *State v. Xie*, 62 Ohio St.3d at 527. *See also State v. Dellinger*, 2002-Ohio-4652, ¶ 22 (6th Dist.). Here, Maynard's original trial counsel's inexcusable failure to intervene during an acute medical crisis leaves these concerns unresolved, demonstrating that Maynard was not afforded highly competent counsel at the time of his pleas. Accordingly, for purposes of our withdrawal analysis, we conclude that the second factor of—the quality of representation—weighs heavily in favor of withdrawal.

*Third and Eighth Factors*

**{¶37}** The third factor asks us to consider whether the defendant was afforded a full Crim.R. 11 hearing before entering his plea, and the eighth factor evaluates whether he understood the charges and potential penalties. Both of these factors strike at the heart of Maynard's third assignment of error, which asserts that his guilty pleas were invalid because they were not entered knowingly, intelligently,

and voluntarily. Because these are inextricably linked, we will address them together.

**{¶38}** "All guilty pleas must be made knowingly, voluntarily, and intelligently." *State v. Moll*, 2015-Ohio-926, ¶ 9 (3d Dist.). ""'"Failure on any of those points renders enforcement of the plea unconstitutional under both the United States Constitution and the Ohio Constitution."'" *State v. Montgomery*, 2014-Ohio-1789, ¶ 10 (3d Dist.), quoting *State v. Veney*, 2008-Ohio-5200, ¶ 7, quoting *State v. Engle*, 74 Ohio St.3d 525, 527 (1996). Crim.R. 11(C)(2), which governs guilty pleas for felony-level offenses, provides:

> In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally . . . doing all of the following
>
> (a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.
>
> (b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.
>
> (c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

**{¶39}** "'[A] defendant is not entitled to have his plea vacated unless he demonstrates he was prejudiced by a failure of the trial court to comply with the provisions of Crim.R. 11(C).'" *State v. Sessom*, 2024-Ohio-130, ¶ 25 (3d Dist.), quoting *State v. Dangler*, 2020-Ohio-2765, ¶ 16. "'The test for prejudice is 'whether the plea would have otherwise been made.''" *Id.*, quoting *Dangler* at ¶ 16, quoting *State v. Nero*, 56 Ohio St.3d 106, 108 (1990).

**{¶40}** However, there are two exceptions to this general rule. *Id.* "First, 'a trial court's complete failure to comply with a portion of Crim.R. 11(C) eliminates the defendant's burden to show prejudice.'" *State v. Caudill*, 2023-Ohio-3843, ¶ 7 (3d Dist.), quoting *Dangler* at ¶ 15. Second, a trial court's failure to explain the constitutional rights listed in Crim.R. 11(C)(2)(c) creates a presumption that the plea was involuntary, and no showing of prejudice is required. *Dangler* at ¶ 14.

**{¶41}** In light of these standards, this court applies a three-step approach to analyze challenges under Crim.R. 11(C)(2). *Caudill* at ¶ 8, citing *Dangler* at ¶ 17. First, we must determine whether the trial court complied with the relevant provision of Crim.R. 11. *Id.*, citing *Dangler* at ¶ 17. If compliance was not literal, we determine whether the failure is of the type that excuses the defendant from showing prejudice. *Id.*, citing *Dangler* at ¶ 17. Finally, if a showing of prejudice is required, we must assess whether the defendant has met that burden. *Id.*, citing *Dangler* at ¶ 17.

**{¶42}** To start, Maynard contends that his guilty pleas were not knowing, intelligent, or voluntary because the trial court failed to strictly comply with Crim.R. 11 by omitting an explanation of his constitutional right to testify. This contention lacks merit. Decisively, the Supreme Court of Ohio expressly rejected the argument that a trial court must advise an accused of the right to testify. *State v. Brown*, 2019-Ohio-313, ¶ 14 (8th Dist.), citing *State v. Bey*, 85 Ohio St.3d 487, 499 (1999). Indeed, while the right to testify is a fundamental and personal right, "a trial court is not required to conduct an inquiry with the defendant concerning the decision whether to testify in his [or her] defense." *Id.*, quoting *Bey* at 499. Consequently, because a trial court has no duty to advise a defendant of their right to testify, the failure to do so cannot constitute error or render a plea invalid under Crim.R. 11. *Accord id.*, citing *Bey* at 500.

**{¶43}** Having disposed of Maynard's argument regarding the right to testify, we turn to his primary contention: that his pleas were not knowing, intelligent, or voluntary due to his compromised cognitive state following his medical emergency. Here, Maynard argues that, regardless of the trial court's procedural compliance with Crim.R. 11, a procedurally proper colloquy cannot overcome a compromised defendant. That is, he contends that the seizure impaired his cognitive clarity to the extent that he lacked the mental capacity required to knowingly and intelligently waive his constitutional rights or to comprehend the nature of the charges and the potential penalties that he faced.

{**¶44**} "In addition to the requirement that a defendant's guilty plea be knowing, intelligent, and voluntary, a trial court must satisfy itself that a defendant who seeks to plead guilty is competent." *State v. Swoveland*, 2018-Ohio-2875, ¶ 25 (3d Dist.). "'The focus of a competency inquiry is the defendant's mental capacity; the question is whether he has the ability to understand the proceedings.'" *State v. Lawson*, 2021-Ohio-3566, ¶ 73, quoting *Godinez v. Moran*, 509 U.S. 389, 401, fn. 12 (1993). "'The purpose of the "knowing and voluntary" inquiry, by contrast, is to determine whether the defendant actually does understand the significance and consequences of a particular decision and whether the decision is uncoerced." *Id.*, quoting *Godinez* at 401, fn. 12.

{**¶45**} "'A defendant is presumed competent to stand trial, and the burden is on the defendant to prove by a preponderance of the evidence that he is not competent.'" *Swoveland* at ¶ 25, quoting *State v. Prophet*, 2015-Ohio-4997, ¶ 13 (10th Dist.). *See also* R.C. 2945.37(G). "In assessing whether to order such a hearing, the trial court should consider '"(1) doubts expressed by counsel as to the defendant's competence, (2) evidence of irrational behavior, (3) the defendant's demeanor at trial, and (4) prior medical opinion relating to competence to stand trial."'" *Swoveland* at ¶ 26, quoting *State v. Hartman*, 2007-Ohio-6555, ¶ 16 (3d Dist.), quoting *State v. Rubenstein*, 40 Ohio App.3d 57, 60-61 (8th Dist. 1987). As the United States Supreme Court has noted, "[t]here are, of course, no fixed or immutable signs which invariably indicate the need for further inquiry to determine

fitness to proceed; the question is often a difficult one in which a wide range of manifestations and subtle nuances are implicated." *Drope v. Missouri*, 420 U.S. 162, 180 (1975). Accordingly, trial courts are tasked with evaluating these indicators to determine if the circumstances call a defendant's competency into doubt. *See State v. Were*, 94 Ohio St.3d 173, 175 (2002).

{¶46} "'The constitutional standard for assessing a defendant's competency to enter a guilty plea is the same as that for determining his competency to stand trial.'" *Swoveland* at ¶ 27, quoting *State v. Montgomery*, 2016-Ohio-5487, ¶ 56, *reconsideration granted in part on other grounds*, 2016-Ohio-7677. "'The defendant must have a "'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and [have] 'a rational as well as factual understanding of the proceedings against him.'"'" *Id.*, quoting *Montgomery* at ¶ 56, quoting *Godinez* at 396, quoting *Dusky v. United States*, 362 U.S. 402 (1960). Importantly, even when a defendant possesses the requisite mental capacity, the trial court maintains an independent duty to ensure that the waiver of constitutional rights is knowing, intelligent, and voluntary. *See Godinez* at 400-401.

{¶47} Applying these principles here, the medical emergency that took place in the presence of the trial court introduced a level of uncertainty regarding Maynard's cognitive state. Under the totality of these circumstances, the situation warranted, at a minimum, a brief pause in the proceedings. *Compare State v. Mink*, 2004-Ohio-1580, ¶ 66 (holding that "[a]dditional inquiry is necessary into a

defendant's mental state once a defendant seeking to enter a guilty plea has stated that he is under the influence of drugs or medication"). Rather than automatically triggering a formal competency hearing, the totality of the circumstances suggested that a temporary delay would have been a reasonable safeguard. Importantly, because this event occurred in real-time and was documented contemporaneously, the record objectively reflects why allowing the defendant sufficient time to recover was necessary before accepting a waiver of his constitutional rights.

{¶48} Specifically, emergency personnel treated Maynard for over two hours following his seizure. While Fire Chief David Bowen ("Chief Bowen") of the City of Napoleon Fire Department testified that he did not observe postictal trembling upon his arrival, he confirmed that the medical report documented a primary impression of "[s]eizures without status epileptics." (July 29, 2025 Tr. at 18). Chief Bowen also acknowledged assessing Maynard with a Glasgow Coma Scale score of 15, indicating a mild brain injury. Furthermore, following a consultation with a medical doctor—a consultation in which Maynard's original trial counsel participated—the formal medical recommendation was that Maynard be transported to the hospital for further evaluation. Although Maynard refused transport against medical advice, emergency personnel remained in the courtroom throughout the plea hearing should he require further medical assistance. When asked why EMS personnel stayed for that duration, Chief Bowen testified it was at the request of the parties, noting that "everybody in the courtroom was concerned with what they

saw." (*Id.* at 23). He further acknowledged that, despite his own initial observations, he could not "negate what was seen in the courtroom." (*Id.* at 24).

{¶49} These medical observations align with the affidavits of both Maynard and his original trial counsel. In particular, Maynard's account of his cognitive impairment reflects that he "was not thinking clearly after [his] seizure," "did not feel like [his] normal self when [he] signed the plea agreement," and did "not believe [he] was mentally sound enough to proceed[] with entering a plea . . . ." (Doc. No. 104, Ex. E). Significantly, Maynard attested that he did "not believe [he] would have plead [sic] if it were not for [his] seizure clouding [his] judgment." (*Id.*). These subjective accounts are bolstered by the external observations of his original trial counsel, who averred that, following the seizure, Maynard was "sluggish, slow, and not thinking clearly," and that he "did not appear to be in a mental state where he should have proceeded with entering a plea." (Doc. No. 106).

{¶50} Moreover, the change of plea hearing occurred on a Friday with a jury pool summoned for the following Monday, a timeline that naturally created momentum to finalize the proceedings. We are mindful of the difficult position trial courts face and the necessity of managing dockets in an expeditious, judicious manner. *State v. Biggers*, 118 Ohio App.3d 788, 790 (10th Dist. 1997). However, the requirement of a knowing, intelligent, and voluntary plea remains paramount and must outweigh considerations for administrative efficiency. *See Stanley v. Illinois*, 405 U.S. 645, 656 (1972); *State v. Lane*, 60 Ohio St.2d 112, 122 (1979).

{¶51} Given the extraordinary circumstances and the objective indicia of Maynard's potentially compromised capacity resulting from a neurological event, the trial court bore a heightened duty to ensure the validity of the plea. *Compare United States v. Damon*, 191 F.3d 561, 565 (4th Cir. 1999) (holding that a plea colloquy cannot be reduced to a "formalistic ritual," and when circumstances raise questions about a defendant's state of mind, the trial court must broaden its inquiry to ensure the plea is knowing, intelligent, and voluntary). Despite this duty, the trial court's reliance on a single, superficial inquiry—asking Maynard if he was "feeling well enough to proceed"—was insufficient. *See Pate v. Robinson*, 383 U.S. 375, 384 (1966) (determining that, while a defendant's demeanor or responses might be relevant, they cannot be relied upon to dispense with a constitutionally required competency inquiry).

{¶52} Furthermore, the lack of meaningful inquiry also implicates whether Maynard understood the nature of the charges and the potential penalties. Although the trial court properly recited the penalties, this mechanical compliance did not ensure that Maynard actually understood them in his compromised state as evidenced by Maynard's confusion when he was remanded to custody following the hearing. *See State v. Lawson*, 2021-Ohio-3566, ¶ 76 (suggesting that a medical-based challenge to a plea requires a specific showing that the defendant "failed to understand the waiver proceedings" or that the "decision was somehow involuntary" because of the medical circumstances).

{¶53} Therefore, given the unique medical event that preceded the hearing, legitimate questions remain regarding whether Maynard possessed the cognitive clarity to enter his pleas knowingly, intelligently, and voluntarily, and whether he fully comprehended the nature of the charges and potential penalties. For the purposes of a presentence motion to withdraw, a defendant need only demonstrate a reasonable basis for such concern, rather than proving a definitive constitutional defect. *See Xie*, 62 Ohio St.3d at 527. Because the circumstances surrounding the Crim.R. 11 colloquy leave these concerns unresolved, we conclude that the third and eighth factors of our presentence withdrawal analysis weigh in favor of granting the motion to withdraw.

*Fourth and Fifth Factors*

{¶54} We next turn to the fourth and fifth factors: the scope of the hearing on the motion to withdraw and whether the trial court afforded the motion full and fair consideration. Here, the trial court conducted a thorough evidentiary hearing and issued a detailed written decision denying Maynard's motion, meaning that the fourth and fifth factors weigh against withdrawal. *See Driscol*, 2022-Ohio-1810, at ¶ 23-24 (3d Dist.).

*Sixth Factor*

{¶55} Turning to the next procedural consideration, the sixth factor examines the reasonableness of the motion's timing. Because Maynard filed his motion just one month after the change of plea hearing—and well in advance of his scheduled

sentencing—the parties agree that this factor weighs in favor of granting the withdrawal. *Accord id.* at ¶ 25 (weighing the sixth factor in the defendant's favor where the motion was filed less than one month after the plea).

*Seventh and Ninth Factors*

{¶56} As to factor seven—the stated reasons for the motion to withdraw—this factor touches directly upon factor nine in this case: whether the accused maintained a claim of innocence or had a complete defense to the charges. *See id.* at ¶ 26. Here, Maynard's primary reason for seeking withdrawal is his consistent assertion of actual innocence. Specifically, Maynard maintains that he was the passenger, not the operator, of the vehicle involved in the fatal crash. Maynard's secondary reason is that his decision to abandon this defense and plead guilty was driven by the compounding pressures of a looming court deadline and coercion from his original trial counsel—a perfect storm that he was left unable to navigate due to his compromised mental state following his in-court seizure.

{¶57} In addition to standard procedural factors, a trial court evaluating a presentence motion to withdraw a plea must consider whether the defendant has presented a meritorious defense. *State v. Tull*, 2006-Ohio-3365, ¶ 12 (2d Dist.). In assessing this factor, we are mindful that a jury could ultimately determine a claimed defense lacks merit, and we make no comment on its future viability. *State v. Gaughan*, 2020-Ohio-4092, ¶ 27 (6th Dist.). However, "the law regarding presentence motions to withdraw a plea only require a defendant to identify a

reasonable and legitimate basis for the requested withdrawal." *Id.* Therefore, "a defendant is not required to prove such a defense at the time of the motion to withdraw; rather they must show that the claimed defense provides a reasonable and legitimate basis on which to withdraw the plea." *Id.* When a trial court prematurely weighs the ultimate merits of a claimed defense rather than simply assessing its legitimacy, it fails to afford the motion full and fair consideration. *Id.*

{¶58} "'In weighing the ninth factor, "the trial judge must determine whether the claim of innocence is anything more than the defendant's change of heart about the plea agreement."'" *State v. Ferdinandsen*, 2016-Ohio-7172, ¶ 21 (3d Dist.), quoting *State v. Davis*, 2015-Ohio-5196, ¶ 19 (5th Dist.), quoting *State v. Davison*, 2008-Ohio-7037, ¶ 45 (5th Dist.). "''A change of heart or mistaken belief about pleading guilty is not a reasonable basis for withdrawal of a guilty plea.''" *Id.*, quoting *State v. Jones*, 2011-Ohio-2903, ¶ 20 (7th Dist.), quoting *State v. Smith*, 2010-Ohio-5784, ¶ 9 (8th Dist.). "Claims of innocence must be substantiated." *Id.* While not a strict bar to withdrawal, a defendant's awareness of a possible defense at the time the plea was entered permits a trial court to reasonably conclude that a legitimate basis for withdrawal does not exist. *State v. North*, 2015-Ohio-720, ¶ 27 (3d Dist.).

{¶59} Based on the specific facts and circumstances presented by this case, Maynard's claim is not a mere, unsupported claim of innocence. In particular, the record demonstrates that the other occupant confessed to driving the vehicle to law

enforcement, and early search warrants named Maynard as the passenger. *Compare State v. Hartman*, 2018-Ohio-4452, ¶ 28 (6th Dist.) (weighing factors seven and nine in the defendant's favor because his consistent assertion of innocence, if true, provided a valid defense to the charges). It is inherently difficult to evaluate the ultimate success of a defense without the benefit of a full evidentiary trial. *State v. Patrick*, 2016-Ohio-3283, ¶ 60 (7th Dist.). Thus, at this stage of the proceedings, the existence of this corroborated evidence is sufficient to establish a legitimate claim of innocence.

{¶60} Moreover, while Maynard was aware of this defense beforehand, the record raises questions about the circumstances surrounding his decision to abandon it. Indeed, the evidentiary materials reflect that the severe neurological event compromised Maynard's decision-making process regarding his defense. In particular, the record contains evidence supporting the assertion that the medical emergency—by compounding the normal stresses of an impending court deadline and his communications with his original trial counsel—left Maynard unable to withstand the dual coercive pressures of his attorney and the looming trial date. *See State v. Walcot*, 2013-Ohio-4041, ¶ 24 (8th Dist.) (suggesting that a coercion claim could be meritorious if the record shows an attorney's pressure went beyond routine recommendations and the defendant lacked a clear understanding of the plea). Consistent with the Maynards' affidavits outlining their communications with original trial counsel, Maynard attested in his affidavit that he "caved to the pressure

of [his] attorney, and the stress and mental effect of [his] seizure at the courthouse when [he] signed the plea agreement." (Doc. No. 104, Ex. E).

{¶61} Consequently, given the corroborated evidence of a complete defense, combined with the documented medical event and the surrounding circumstances under which the pleas were executed, we conclude that factors seven and nine weigh in Maynard's favor. *See State v. Williams*, 2025-Ohio-4352, ¶ 53 (6th Dist.) (suggesting that concrete evidence demonstrating "how or if [the defendant's] health conditions impacted his case" would be highly relevant to supporting a withdrawal).

*Conclusion*

{¶62} In conclusion, although we find that the fourth and fifth factors weigh against withdrawal, the remaining factors weigh in Maynard's favor. Therefore, we conclude that, based on the totality of the circumstances, Maynard demonstrated a reasonable and legitimate basis to withdraw his guilty pleas. Unlike cases involving a mere change of heart, the record here presents a unique confluence of factors. Critically, despite a documented medical emergency, Maynard's original trial counsel failed to request a continuance to ensure that his client was fully recovered and competent to proceed. Instead, counsel permitted a compromised client to enter a plea agreement with limited guaranteed sentencing concessions, all while Maynard maintained his actual innocence. "When a defendant claims he is innocent and wishes to withdraw his plea of guilt prior to sentencing, a comparison of the

interests and potential prejudice to the respective parties weigh heavily in the interests of the accused." *Hartman*, 2018-Ohio-4452, at ¶ 29 (6th Dist.).

{¶63} Indeed, when evaluating the legitimacy of a claim of innocence, we recognize a fundamental distinction between a defendant who wields the withdrawal process as a mere delay tactic and a defendant who articulates a corroborated defense, establishes that the plea was executed following a documented medical emergency, and causes no actual prejudice to the State. *Compare State v. Johnson*, 2023-Ohio-371, ¶ 34 (8th Dist.) (recognizing that "'[t]here is a huge difference between a presentence-plea-withdrawal case in which a defendant uses the plea-and plea-withdrawal process as a delay tactic or refuses to articulate a potential defense to the charges and a case like this one in which the defendant made very specific assertions about his innocence and problems with the plea process, did so without delay, and there was no assertion of prejudice by the state. Such cases should not be treated the same"), quoting *State v. Harmon*, 2021-Ohio-4109, ¶ 7 (Donnelly, J., dissenting). Thus, since Maynard's motion is rooted in objective medical documentation and a promptly asserted defense rather than tactical gamesmanship, it demands the liberal consideration envisioned by the Supreme Court.

{¶64} Thus, under this liberal standard, the trial court's denial of Maynard's motion to withdraw his guilty pleas—when viewed in light of the documented medical event and the surrounding circumstances of the pleas—was arbitrary, unreasonable, or unconscionable. *See Patrick*, 2016-Ohio-3283, at ¶ 61 (7th Dist.).

Accordingly, we conclude that the trial court abused its discretion by denying Maynard's presentence motion to withdraw his guilty pleas. *Accord State v. Adams*, 2012-Ohio-5979, ¶ 35 (7th Dist.).

{¶65} Maynard's first assignment of error is sustained.[3]

{¶66} Having found error prejudicial to the appellant herein in the particulars assigned and argued in his first assignment of error, we reverse the judgment of the trial court and remand for further proceedings.

***Judgment Reversed***
***and Cause Remanded***

**MILLER and WILLAMOWSKI, J.J., concur.**

---

[3] In light of our decision to sustain Maynard's first assignment of error, his second and third assignments of error are rendered moot, and we decline to address them.  App.R. 12(A)(1)(c)

Case No. 7-25-10

# **JUDGMENT ENTRY**

For the reasons stated in the opinion of this Court, the first assignment of error is sustained and it is the judgment and order of this Court that the judgment of the trial court is reversed with costs assessed to Appellee for which judgment is hereby rendered.  The cause is hereby remanded to the trial court for further proceedings and for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket.  *See* App.R. 30.


                William R. Zimmerman, Judge


                Mark C. Miller, Judge


                John R. Willamowski, Judge


DATED:
/hls